337 So.2d 426 (1976)
STATE of Louisiana
v.
Ruben BIAS.
No. 57458.
Supreme Court of Louisiana.
September 13, 1976.
*427 James B. Supple, Robertson & Supple, Morgan City, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Edward M. Leonard, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant was convicted of armed robbery, La.R.S. 14:64, and sentenced to thirtyfive years at hard labor, without benefit of parole, probation or suspension of sentence. He appealed and filed eight assignments of error, one of which has been abandoned.
On the evening of September 24, 1974, William Pace, who was hitchhiking on Highway 90 near Morgan City, accepted an offer of a ride from three men in a light colored Plymouth. Shortly after entering the vehicle he was taken to a side road, threatened with a knife, beaten and robbed of $31 and his wedding ring. Pace narrowly escaped further physical abuse and perhaps death by breaking away from his assailants and running into some nearby woods. Later he was found crawling on the side of a road by a truck driver who took him to a pipe yard in the vicinity and called the police.
In addition to Pace's positive identification of the defendant as one of the robbers, the State presented the following evidence:
The defendant and two companions were seen at a bar soon after the robbery. At this time one of the companions was wearing a wedding ring resembling the one taken from Pace in the robbery. The defendant and his companions were together most of that evening and they were traveling in a Plymouth automobile similar to the one described by Pace. Later, when the automobile was searched, Pace's false teeth were found on the back floorboard. When one of the defendant's companions was arrested he had Pace's wedding ring in his possession.

ASSIGNMENTS OF ERROR NOS. 1 and 3
A deputy sheriff testified that he was at a hospital interviewing Jack Jason, the victim of a different armed robbery, which occurred on the same night, when he was instructed to proceed to the pipe yard to see Pace. Defendant's motion for a mistrial, based on the ground that the State had introduced evidence of another crime committed by the defendant, was denied. Later in the trial, the deputy was recalled by the State for the purpose of testifying that there was no evidence which would connect the defendant with the robbery of *428 Jack Jason and that it was merely coincidental that he was at the hospital interviewing Jason when he was summoned to investigate the robbery of Pace. Before the deputy was recalled, defendant objected on two grounds: that the State should not be allowed to recall him because he had finished his testimony; and that his testimony would give the jury the impression that defendant was implicated in the crime against Jason. At this point the judge instructed the jury to disregard the testimony of the deputy regarding the robbery of Jack Jason and admonished the jury to draw no inference that the defendant was connected with the offense involving Jason.
The State's apparent motive in introducing the deputy's testimony about his seeing Jason at the hospital was to counteract the testimony which it anticipated would be given by one of defendant's witnesses. Edward Welch was called as a witness by the defendant, and he testified that he was at the hospital on the night of the robbery and heard Pace say he was robbed by some persons in a gold GTO whom he could not identify as being either black or white. Therefore, the State undoubtedly was attempting to establish that there were two robberies on the same evening, that both victims were brought to the same hospital, but that Welch had confused Jason with Pace and, consequently, was mistaken when he attributed what he overheard to Pace.
Defendant argues that the trial judge committed reversible error for several reasons. First, he contends that the State was permitted to introduce evidence of a prior offense committed by the defendant without giving notice as required by State v. Prieur, 277 So.2d 126 (La. 1973). Next, he argues that the deputy's remarks, intentionally elicited by the district attorney, referred directly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible, and therefore constituted grounds for a mandatory mistrial. La.C.Cr.P. art. 770. Finally, defendant complains that, at the very least, the State's tactics were improper because the deputy's testimony was introduced in anticipation of his defense, which he contends is not allowed by La.R.S. 15:446.
Under the circumstances of this case, we find no merit in defendant's arguments. Taking the record as a whole we do not think that any suggestion was intended or made to the jury that defendant had robbed Jason or any person other than Pace. The safeguards set forth in State v. Prieur, 277 So.2d 126 (La.1973) and La.C.Cr.P. art. 770 afford an accused protection in cases where the State seeks to expose the jury to evidence or remarks relating to his previous offenses or conduct. Since the jury in the instant case was not exposed to any such material we conclude these safeguards were not abridged and that defendant was not entitled to a mistrial on either of these grounds.
La.R.S. 15:446, the statute cited by defendant, affords no basis for defendant's argument that the State's evidence concerning the presence at the hospital of the second robbery victim, Jason, was improperly admitted during the prosecution's case in chief. Instead, the statutory basis, if any, for defendant's contention is supplied by the following provisions:
La.R.S. 15:282 provides:
"The prosecution has the right to rebut the evidence adduced by the defendant, but the defendant is without right to rebut the prosecution's rebuttal."
La.Code of Criminal Procedure art. 765(5) provides:
"The normal order of trial shall be as follows:
"* * *
"(5) The presentation of the evidence of the state, and of the defendant, and of the state in rebuttal. The court in its discretion may permit the introduction of additional evidence prior to argument;
" * * *."
In State v. White, 206 La. 744, 20 So.2d 10 (1944), we held that the introduction by the State of rebuttal evidence during its case in chief was irregular but harmless because the defendant subsequently introduced *429 evidence in contravention thereof. Here, a similar sequence of events occurred. The State improperly introduced in chief rebuttal evidence showing the existence of a second robbery victim, but the subsequent introduction by the defense of Welch's testimony casting doubt on Pace's ability to identify his assailant served to clarify for the jury the reason for the earlier introduction of the State's evidence. We do not condone the State's action in this instance, but we cannot find that the defendant was prejudiced by it, because the prosecution properly could have offered the same testimony in rebuttal at the close of the defendant's case.
Defendant presented two subsidiary arguments in which we find no merit. He contends that the trial judge's action forced him to call Welch as a witness, but we find nothing harmful whatsoever to defendant's case in Welch's testimony, and we cannot conceive of any reason why Welch would not have been used in any event as a witness for the defense. Defendant complains that the State should not have been allowed to recall the deputy for the purpose of testifying that there was absolutely no connection between the defendant and the Jason robbery. However, the recalling of a witness lies within the sound discretion of a trial judge, which clearly was not abused in this instance. La.C.Cr.P. art. 765(5). See, State v. McLean, 211 La. 413, 30 So.2d 187 (1947).
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 2
During his direct examination relating to the events leading to the armed robbery, Pace testified:
"Q. All right, sir. Who was sitting in the front? How many in the front and how many in the back?
"A. There were two in the front and one in the back.
"Q. Okay. And you sat in the back also?
"A. Yes, sir.
"Q. Where did you sit, on the righthand side or
"A. I sat on the righthand side; yes, sir.
Q. That would be on the passenger side if you were in the front seat, is that correct?
"A. Yes, sir.
"Q. All right. Did you talk to them or did they talk to you?
"A. Well, not immediately. We started going and the one in the front seat just right after we started going turned around and looked at me and he had a bent spoon in his hand. Now, I wasn't seeing things, and it was a burned bent spoon. The first thing that came to my mind was `Oh God, that's "horse," you know. I'm in trouble. We're going to get killed.'
"Q. That was what came to your mind?
"A. Yes, sir; that's the first thing that came to my mind."
At that time defense counsel moved for a mistrial on the grounds that Pace's reference to "horse," a colloquial term for heroin, was an improper reference to another crime committed by defendant. This motion was refused.
La.Code of Criminal Procedure article 770 makes a mistrial mandatory when the judge, district attorney or a court official refers to another crime committed by defendant as to which evidence is not admissible. In this case the contested remark was made by a witness, and there is no indication that the State intended to elicit his reference to "horse." Furthermore, Pace testified that the bent spoon was in the possession of a man in the front seat of the automobile, whereas he stated that defendant was seated beside him in the back seat. Clearly, article 770 was inapplicable. See State v. Lepkowski, 316 So.2d 727 (La.1975), and State v. Demourelle, 332 So.2d 752 (La. 1976). When the trial judge denied the motion for a mistrial, defense counsel did not request an admonition to the jury, nor do we think that Pace's remarks warranted it. See La.C.Cr.P. art. 771. This unsolicited *430 and cryptic allusion to heroin in the possession of someone other than the defendant was not of such a nature that it might create prejudice against the defendant in the mind of the jury.
Again, the need for Prieur notice was obviated by the fact that the "other crimes" evidence, if it can be labelled as such, did not relate to the defendant.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 5
This assignment relates to the court's refusal to allow Edward Welch's wife to testify for the defense because she had not been sequestered during the trial.
At defense counsel's request, all of the witnesses were placed under the rule of sequestration. Ms. Welch, who was not expected to be called as a witness, remained in the courtroom throughout the trial. Edward Welch, a defense witness, testified that he was at Lakewood Hospital when Pace was admitted for the treatment of his injuries and overheard Pace telling a nurse that he was unable to identify his assailants. During the course of this testimony, defense counsel learned that Ms. Welch had also been at the hospital and subsequently called her to the stand to corroborate her husband's statements. The State objected on the basis that Ms. Welch had not been sequestered and the objection was sustained.
La.Code of Criminal Procedure article 764 regulates the sequestration of witnesses:
"Upon its own motion the court may, and upon request of the state or the defendant shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice."
The jurisprudence interpreting this article has held that it vests in the trial judge the authority to disqualify a witness who has violated the sequestration order. State v. Holmes, 305 So.2d 409 (La.1974); State v. Barnard, 287 So.2d 770 (La.1974); State v. Coleman, 254 La. 264, 223 So.2d 402 (1969).
The order of sequestration is intended to insure that a witness will testify as to his own knowledge of the case without being influenced by the testimony of other witnesses, and to strengthen the role of cross-examination in developing the facts. State v. Holmes, supra; State v. Barnard, supra. Both of these objectives would have been thwarted by permitting Ms. Welch to testify, as she had been present during the testimony and cross-examination of her husband. We find no abuse of the trial court's discretion in excluding her as a witness.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 6
Defendant claims that the trial court should have suppressed the victim's identification of him in a line-up at which he was not offered the assistance of counsel.
The line-up was conducted almost a month before a bill of information was filed charging defendant with armed robbery and thereby initiating formal criminal proceedings against him. The law is well settled that counsel is not required at pre-indictment line-ups. State v. Nero, 319 So.2d 303 (La.1975); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 7
The denial of defendant's motion for a new trial, alleging the discovery of material new evidence, forms the basis of this assignment of error. The newly discovered evidence consisted of the affidavit of Calvin Turner, a former co-defendant of the accused, which was executed following Turner's conviction of simple battery. Turner stated that there was no weapon involved in the robbery of Pace, and that defendant had been drunk and unconscious and did not participate in the beating or robbery. *431 Turner had been unwilling to cooperate with defense counsel until he had negotiated a guilty plea after the conclusion of defendant's trial.
La.Code of Criminal Procedure article 851 sets forth the grounds for which a new trial may be granted:
"The court, on motion of the defendant, shall grant a new trial whenever:
" * * *."
"(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
" * * *."
Motions for a new trial made on the basis of newly discovered evidence are received with extreme caution, and a verdict will not be set aside unless the new evidence is "so material that it ought to produce a different result." State v. Ferguson, 307 So.2d 361 (La.1975); State v. Jackson, 253 La. 205, 217 So.2d 372 (1968). The hearing judge is not compelled to credit new evidence which he considers suspicious or incredible. State v. Jackson, supra.
In determining that defendant's newly discovered evidence would not have affected the jury's decision, the court below noted:
"* * * The newly discovered evidence upon which defense counsel seeks a new trial is inconsistent with the evidence presented by the defense at the time of trial. At trial the defense was alibi. The defendant was supposed to have been at home at the time of the crime. This new evidence puts the defendant in the car at the time of the crime but so intoxicated that he could not participate in the robbery."
Under the circumstances, we find no abuse of the trial court's broad discretion in denying the motion for a new trial.
This assignment is without merit.
Assignment of error number 8 has been abandoned.

ASSIGNMENT OF ERROR NO. 4
During the trial, the jury was removed from the courtroom so that the State could lay a foundation for introducing an inculpatory statement made by defendant. The arresting officer testified that he had twice informed defendant of his Miranda rights, once at the time of his arrest and later when he was transported to the police station where he shortly thereafter made the incriminating remarks. The officer stated that he had made no threats or promises to defendant nor coerced his statement in any way. On cross-examination, he further claimed that defendant had appeared to be sober and in control of his faculties during questioning. Although it was established that defendant had not signed a waiver of rights form, the officer explained that this form had not been available to him at that time.
Following this testimony, the court heard arguments of counsel, then advised defense counsel that unless he had additional evidence the statement would be admitted. Thereafter, the following exchange took place between defense counsel and the court:
"[DEFENSE COUNSEL]:
Well, Your Honor, I could put the defendant on the stand to testify that his rights weren't read to him and if they were that he didn't understand it, and he was drunk at the time.
"BY THE COURT:
"That wouldn't
"[DEFENSE COUNSEL]:
"That wouldn't change your mind?
"BY THE COURT:
"That wouldn't change the Court's impression on that.
"So the Court will rule that the other statement is admissible.
"[DEFENSE COUNSEL]:
"Of course, Your Honor, to protect the record, I would object to the ruling."
*432 Defendant argues that the court erred in refusing to consider his testimony in determining whether his statement was freely and voluntarily given. The trial judge maintains in his per curiam opinion, however, that he did not preclude defendant from testifying but merely informed counsel that he "could not see how the defendant's testimony would render the statement inadmissible assuming that the defendant would testify in a manner similar to the police officer." This assumption was clearly erroneous in light of counsel's representation to the court that defendant would testify he was not given or did not understand his rights.
Before a confession may be admitted into evidence, the State has the burden of proving affirmatively and beyond a reasonable doubt that the statement was made freely and voluntarily by the defendant and not through coercion. La.R.S. 15:451-52, La.C.Cr.P. art. 703(C), State v. Peters, 315 So.2d 678 (La.1975). Our jurisprudence is replete with cases in which we held that the State had failed to carry its burden because it did not rebut the defendant's specific allegations of involuntariness, despite the general testimony by State's witnesses that the statement was freely and voluntarily given. State v. Peters, supra. Had defendant aired his specific complaints, the arresting officer's initial testimony may not have been sufficient to rebut them; thus we cannot assume from the incomplete record before us that the State would have sustained its heavy burden of proof no matter what defendant alleged on the stand.
Although defense counsel did not forcefully assert his right to present defendant's testimony to the court, we find that he was discouraged from doing so by the court's stated predetermination of the issue before it. We are satisfied that the court did not intentionally curtail defendant in the presentation of his proof, but nevertheless conclude that because his remarks had that natural effect the case must be remanded to give defendant an opportunity to testify as to the voluntariness of his statement.
Since we find no other trial error, it is not necessary at this time to reverse the conviction and order a new trial, because the error might be eliminated at another hearing on the voluntariness of defendant's confession. We reserve to the trial judge the power to grant a new trial should he determine the confession inadmissible (a matter on the merits of which we express no opinion). If, on the other hand, the trial judge determines that the confession was freely and voluntarily given, defendant may appeal that decision to this Court if he chooses. In the absence of such an appeal, the conviction and sentence will be affirmed. See, State v. Simmons, 328 So.2d 149 (La.1976).
The case is, therefore, remanded to the district court for further proceedings in accordance with this opinion.