525 So.2d 1229 (1988)
STATE of Louisiana
v.
Lee E. RACCA, Jr.
No. KA 87 1077.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
Bryan Bush, Dist. Atty., Office of Dist. Atty., Baton Rouge, by Brenda Creswell, Asst. Dist. Atty., for plaintiff/appellee.
Eddie L. Anderson, Jr., Baton Rouge, for defendant/appellant.
Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
*1230 COVINGTON, Chief Judge.
Lee E. Racca, Jr. was charged by bill of information with molestation of a juvenile, in violation of La.R.S. 14:81.2; and aggravated oral sexual battery, in violation of La.R.S. 14:43.4. He was tried by a jury, which convicted him as charged on each count. The trial court imposed concurrent terms of seven years at hard labor for each conviction. Defendant appealed, urging eight assignments of error, as follows:
1. The trial court erred by requiring that defendant be screened from the victim's view during her testimony.
2. La.R.S. 15:283 is unconstitutional.
3. The court erred by ruling the child-victim was competent to testify.
4. The sentences imposed are excessive.
5. The court erred by permitting the introduction of hearsay testimony.
6. The evidence is insufficient to sustain the verdict.
7. The court erred by permitting the state to make prejudicial remarks and to ask prejudicial questions.
8. The verdicts were contrary to the law and evidence.
Assignments of error seven and eight were not briefed by defendant and, therefore, are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4. Defendant designated all errors discoverable by an inspection of the pleadings and proceedings as his ninth assignment of error; however, he does not urge that a particular error was committed. This Court routinely reviews every criminal appellate record for patent error. Our inspection of the instant record does not reveal the existence of such.

FACTS
The victim of the instant offenses was defendant's niece, who was six years old at the time of the incidents. The victim's parents were divorced; and she lived with her mother and step-father in Texas. The offenses occurred while the victim and her younger sister were visiting their father, defendant's brother, during the summer. Their father, Faron Racca, and his wife, Lisa, lived in an apartment complex in Baton Rouge, Louisiana. Defendant, who was eighteen years old at the time, stayed with his brother from time to time. Defendant, Faron and Lisa Racca, their two-week old son, the victim, and her sister, were sharing a two-bedroom apartment when the incident took place.
Although the victim's father had the custodial care of the victim and her sister during the summer, the girls' step-mother, Lisa Racca, took care of them while her husband worked. On one occasion, defendant agreed to stay with the two girls while Mrs. Racca ran errands. When she returned, Mrs. Racca noticed that the victim's face was scratched. Defendant and the girls told her that the victim had tripped and fallen down the stairs. After he learned of the victim's injuries, Faron Racca sought the advice of a nurse who lived in the same apartment complex. He also testified that he took her to a doctor for treatment of the injuries.
The girls left the day after the incident to visit their maternal grandmother. She brought them back to their mother and step-father approximately one week later.
The victim's step-father, Patrick McCrary, testified that he noticed a change in the language used by the girls when they returned home after having spent approximately five weeks in Baton Rouge. He explained that both of them had begun to curse and use foul language. Within a few days of their return, both girls also told their parents that "Uncle Little Rock" played dirty tricks on them. Mr. McCrary testified that, although both he and his wife suspected some type of abuse had occurred, they were not able to learn what had happened until mid-September, approximately two months after the girls returned home. Over defendant's objection, Mr. McCrary testified that the victim told him defendant had placed his penis in her mouth.
Mr. McCrary related that he and his wife immediately reported the incident to local authorities. They returned to Baton Rouge the following weekend in order to *1231 file a complaint. Defendant was arrested and charged with the instant offenses.

DENIAL OF RIGHT OF CONFRONTATION
By assignments of error one and two, defendant urges that the court erred by permitting the victim to testify by way of closed-circuit television because he was denied his right to confront her. In assignment of error number one, defendant contends that La.R.S. 15:283, which authorizes the procedure permitting a child who is the victim of physical or sexual abuse to testify by closed-circuit television, is unconstitutional as applied in this matter. In assignment of error number two, defendant contends that La.R.S. 15:283 is unconstitutional on its face.
By assignment of error number one, defendant asks this Court to reconsider the opinions expressed in State v. Daniels, 484 So.2d 941 (La.App. 1st Cir.1986), in which we held that the use of the procedures authorized in La.R.S. 15:283 did not abridge the defendant's right of confrontation. Defendant does not attempt to distinguish the method used to obtain the victim's testimony in the instant matter from those methods considered by the court in Daniels; he simply requests that we find that the use of the same methodology denied him the right to confront the victim.
The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 (1965), the federal right to confrontation was made binding on the states through the Fourteenth Amendment.
The Court set forth the purposes underlying the constitutional right of confrontation in California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). Therein, the Court noted the purposes protected by that right are as follows: (1) to insure that the witness will give his statements under oath, thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) to force the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; (3) to permit the jury that is to decide the defendant's fate [the opportunity] to observe the demeanor of the witness making his statement, thus aiding the jury in assessing his credibility. See also State v. Kaufman, 304 So.2d 300 (La.1974), U.S. cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976).
As noted by this Court in State v. Daniels, supra, at 944, the legislature attempted to ease the burden that the judicial system places on the child victim by enacting La.R.S. 15:283. Therein, we concluded that La.R.S. 15:283 preserves the essential elements of confrontationthe oath, the opportunity to observe the witness' demeanor, and the right to cross-examine. We found that the defendant's right to confront the child face to face during the child's testimony is not critical to the purposes of cross-examination. As long as the defendant can hear the child's testimony and confer with his attorney, the essential safeguards of cross-examination are preserved.
Defendant urges that this instant matter is factually distinguishable from State v. Daniels, supra, because there was no showing that the victim suffered physical or psychological harm at the hands of defendant. To the contrary, the victim's step-father testified that for several weeks after her return, he was unable to learn what actions constituted the "dirty tricks" practiced upon the victim by defendant; and, when the victim eventually described what defendant had done, she was extremely upset. Moreover, both defendant's brother and his sister-in-law testified they sought medical aid for the victim on the day the incidents occurred for the scratches and carpet burns on her face.
Defendant also sets forth several ways in which the victim's testimony and demeanor might have been affected if she had been able to see him during questioning. We are not persuaded, however, that the fact that defendant was out of sight of *1232 the victim might have had an impact on her testimony so as to establish that defendant's right of confrontation was abridged. Herein, all of the elements of confrontation were preserved except the ability of the witness to see the defendant and the jury. We find, therefore, that the constitutional mandate is satisfied. This assignment of error has no merit.
By assignment of error number two, defendant submits that La.R.S. 15:283 is facially unconstitutional because it affects the testimony of the witness, the witness's demeanor, and the decision making process of the jury. Defendant does not specify which aspect of the constitution is abridged by this statute; however, he apparently reurges his complaint that the right of confrontation is affected. La.R.S. 15:283 is not an unconstitutional infringement on the right of confrontation. State In Interest of R.C. Jr., 514 So.2d 759 (La. App. 2d Cir.), writ denied, 516 So.2d 128 (La.1987); State v. Daniels, supra.

COMPETENCY OF THE VICTIM
By assignment of error number three, defendant contends that the trial court erred by finding that the victim was competent to testify. He complains that the attorneys were prohibited from asking any questions about the facts of the case during the competency hearing, and that no questions were asked in order to ascertain her understanding of human anatomy, sexual terminology, the effect of swearing an oath, or the consequences of lying.
La.R.S. 15:469 provides for the determination of the competency of a witness, as follows:
Understanding, and not age, must determine whether any person tendered as a witness shall be sworn; but no child less than twelve years of age shall, over the objection either of the district attorney or of the defendant, be sworn as a witness, until the court is satisfied, after examination, that such child has sufficient understanding to be a witness.
The determination by the trial judge that a child witness is competent to testify is based not only upon the child's answers to questions testing his understanding but also on the child's overall demeanor on the witness stand. State v. Humphrey, 412 So.2d 507, 516 (La.1981). For that reason, the court is vested with wide discretion in determining competency; and, on appeal, the court's ruling is entitled to great weight. State v. Noble, 342 So.2d 170 (La. 1977). A ruling by the trial judge that a witness is competent to testify will not be disturbed in the absence of manifest error. State v. Arnaud, 412 So.2d 1013 (La.1982).
During the hearing to determine her competency, the victim testified that she knew what it means to tell the truth and that she knew what a lie is. She further testified that she knew it was bad to tell a lie and that it was good to tell the truth. She stated that she would tell the truth in her testimony. We find, therefore, that the trial court did not err by finding that the victim's responses indicated that she had sufficient understanding to be a witness.
Defendant also complains that the competency determination did not include questions designed to ascertain the victim's understanding of anatomy and sexual terminology. The trial court offered the state and defendant the opportunity to question the victim about any matters other than the facts of the offenses. Defendant waived his opportunity to question the victim; thus, he cannot now complain that her understanding of anatomy or sexual terminology was not examined. This assignment of error has no merit.

EXCESSIVE SENTENCE
By assignment of error number four, defendant submits that the trial court imposed an excessive sentence. He contends the court erred by concluding that he would not make a good candidate for probation. Defendant specifically bases this claim upon the fact that the existence or seriousness of any harm that the victim might have incurred was not documented by expert opinion or reports and, therefore, the court's assessment of defendant's behavior *1233 was based upon the largely uncorroborated testimony of a six-year-old girl.
This assignment of error has no merit. We note, initially, that the harm done by the acts of the accused is only one of the factors the court should consider in determining the sentence to be imposed. La.C.Cr.P. art. 894.1. Further, there is no requirement that the harm done to the victim must be established by expert opinion. The trial court saw and heard the victim testify and, therefore, was able to evaluate the harm caused by defendant's actions. Moreover, the victim's mother and step-father testified that the victim became very upset when she was questioned about the incident. The trial court properly considered the harm suffered by the victim despite the lack of documentation by expert witnesses.
The maximum sentence that could be imposed for aggravated oral sexual battery is twenty years at hard labor. La.R.S. 14:43.4. The maximum sentence that could be imposed for a conviction of molestation of a juvenile when the offender has control or supervision over the juvenile is fifteen years at hard labor. La.R.S. 14:81.2. The trial court has wide discretion in the imposition of sentences, and a sentence within statutory limits will not be set aside in the absence of an abuse of that discretion. State v. Wardlow, 448 So.2d 257 (La.App. 1st Cir.1984).
The transcript of the sentencing hearing reflects that the trial court carefully considered the criteria of La.C.Cr.P. art. 894.1. The court listed each of the eleven factors set forth in that article, and discussed its relevance with relation to defendant, the victim and the offense. The court concluded that defendant would have been a candidate for a probated sentence in other circumstances; however, the court was of the opinion that the extreme youth of the victim and the damage she sustained mandated against probation. However, the court recommended that defendant be considered for the intensive incarceration and parole supervision program authorized by La.R.S. 15:574.4.
The reasons provided by the trial court support the sentence imposed. We find no abuse of discretion.

ADMISSION OF HEARSAY TESTIMONY
By assignment of error number five, defendant submits that the court erred by permitting the victim's step-father to testify about the complaint made by the victim to him. Defendant contends this testimony was inadmissible hearsay evidence.
In prosecutions for sexual offenses, the original complaint of the victim is admissible under either the res gestae doctrine or as a special exception to the hearsay rule. See State v. Pace, 301 So.2d 323 (La.1974). The nature of the crime and the identity of the offender disclosed in the complaint is admissible testimony. Id.
Defendant contends that the statement in which the victim revealed the nature of the "dirty tricks" involving defendant does not qualify as the original complaint. He submits that the original complaint of the victim occurred almost two months earlier, when the victim first told her step-father that defendant had played dirty tricks upon her, despite the fact that she did not reveal the substance of those actions. He claims, therefore, that her explanation of the activities defendant forced her to perform was neither her original complaint nor admissible as a part of the res gestae.
The original complaint of a young child is the statement made at the first reasonable opportunity under the particular facts and circumstances of the case. See State v. Prestridge, 399 So.2d 564 (La.1981). The victim's mother and step-father testified that they did not want to force the victim to talk about the "dirty tricks" because she was upset; therefore, they did not attempt to pressure her to give a statement earlier. The record reflects that the conversation between the victim and her step-father in which she related that defendant had placed his penis in her mouth was, in fact, the first reasonable opportunity for the victim to voluntarily reveal what had occurred. *1234 See State v. Garay, 453 So.2d 1003 (La.App. 4th Cir.1984). Thus, that statement comprised the original complaint and was properly admitted.

SUFFICIENCY OF THE EVIDENCE
By assignment of error number six, defendant complains that the state failed to prove the essential elements of the offense. Defendant contends that the testimony of the victim's father should be disregarded because of its nature as hearsay evidence. He also submits that the testimony of the victim should be disregarded because she was not competent to testify.
We have previously determined that the testimony of the victim's father was admissible as the early complaint of a victim of child abuse. We have also determined that the court did not err in determining that the victim was competent to testify. The record reflects that the testimony of the victim established the essential elements of the offenses beyond a reasonable doubt.
The proper method to raise the issue of insufficient evidence is by motion for post verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The record does not reflect that defendant made such a motion. Nevertheless, a reviewing court must consider the evidence to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979), now codified in art. 821, in spite of the defendant's failure to proceed properly, if the issue is briefed pursuant to a formal assignment of error. State v. Bell, 442 So.2d 715 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1244 (La.1984). The standard set forth in art. 821 is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Walker, 447 So.2d 54 (La.App. 1st Cir.1984).
Oral sexual battery includes (but is not limited to) the touching of the genitals of the offender by the victim using the mouth or tongue of the victim, when the offender either compels the other person to submit by placing the victim in fear of receiving bodily harm, or when the other person has not yet attained fifteen years of age and is at least three years younger than the offender. La.R.S. 14:43.3. La.R.S. 14:43.4 defines aggravated oral sexual battery as an oral sexual battery committed when the intentional touching of the genitals or anus of one person and the mouth or tongue of another is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act without the consent of the victim.
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. La.R.S. 14:81.2.
The victim testified that defendant told her to suck his "pee", which she defined as [a person's] "private part." She testified that he told her to do it again the following morning, and that he slapped her on the face when she started to cry, scratching her lip with his class ring. She related that, after she complied with his demands, *1235 defendant "pottied" on his stomach. She further testified that, on another occasion, defendant stuck his hand down her pajamas and touched her panties.
Defendant also testified at trial. He denied any type of sexual activity with the victim. He testified, however, that on two occasions she walked into the room while he was masturbating. He also testified that the victim had fallen down the stairs in the apartment on the date her lip was scratched; and that she had apparently walked into the room while he was watching a pornographic movie earlier in the afternoon, from which she obtained knowledge of the activity she described.
The trier of fact can accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984). The credibility of the witnesses will not be reweighed on appeal. See State v. Matthews, 450 So.2d 644 (La.1984).
The testimony of the victim is sufficient to establish the elements of the offense. State v. Walder, 504 So.2d 991 (La.App. 1st Cir.), writ denied, 506 So.2d 1223 (La.1987). Any rational trier of fact could have found that the testimony of the victim established the elements of the offense beyond a reasonable doubt. This assignment of error has no merit.
For the foregoing reasons the convictions and sentences are affirmed.
AFFIRMED.