588 So.2d 1243 (1991)
STATE of Louisiana
v.
William MOSER and Timothy Page.
No. 90 KA 1418.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
*1245 William R. Campbell, Jr., New Orleans and Pamela Hershey, Asst. Dist. Atty., Covington, for the State.
James H. Looney, Office of Indigent Defender, Covington, for appellants.
Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
William Moser and Timothy Page were indicted with aggravated rape, a violation of La.R.S. 14:42. Defendants pled not guilty and, after trial by jury, were convicted as charged. The trial court denied defendants' motions for new trial and post verdict judgment of acquittal and sentenced them similarly to serve a term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Defendants have appealed, urging in two assignments of error that the trial court erred by denying defendants' motion for mistrial and that the evidence was insufficient to support the convictions.
FACTS
On September 9, 1989, defendants committed an aggravated rape upon a twenty-five year old female in the Honey Island Swamp area of St. Tammany Parish. The victim was a bartender at a lounge; and she had been fired by the bar owner sometime between 1:00 and 1:30 a.m. In order to relieve tension, the victim took a walk by herself on Highway 11 going towards Pearl River.
After she had gone approximately a quarter of a mile, a truck pulled up behind her. The two men inside the truck asked the victim if she wanted a ride. She recognized the men from having served them each a Budweiser beer earlier in the evening at the lounge. She told the men "no" and kept walking. The driver of the truck, identified by the victim as being William Moser, got out of the truck, came up behind the victim, grabbed her, put a knife to her throat, and forced her to get into the truck. The passenger, identified by the victim as being Timothy Page, pulled the frightened woman into the truck. The victim was afraid Moser was going to cut her throat.
Moser then proceeded to drive the truck down the highway. When the victim repeatedly begged to be released and asked where defendants were taking her, Page ignored her questions and, instead, slapped her twice on the head "as hard as he could"; he also ordered her to "shut up." When the victim repeated her questions later, defendants laughed and Page said, "[W]e're going to get us some pussy." Defendants then drove the victim to a deserted area in the Honey Island Swamp. Once at the swamp, defendants forced the victim out of the truck and Page told her to remove her clothing. Scared and afraid of being killed, the victim complied and put her clothing on the ground.
At that point, the victim was forced to get on her knees and perform oral sex on Moser while Page anally raped her. When Moser complained that she was not doing a good job, Page kicked her from behind. After Page raped the victim anally, defendants changed positions and forced the victim then to perform oral sex on Page while Moser raped the victim anally. After raping the victim, defendants conferred privately near the truck, leaving the victim nearby. Before the frantic victim was able to come up with an escape plan, Page commanded her to come over to the truck and again get on her knees. He then urinated into her mouth and made her swallow the urine. Defendants then made the humiliated victim lie on the ground (still unclothed), whereupon they poured an ice chest of cold water all over her.
The victim asked for her clothes, and Page allowed her to put on her shirt only. Defendants then sat down by the victim and described in detail how they were going to murder her and leave her body hidden in the swamp. To demonstrate, Moser put his knife to the victim's inner thigh and *1246 cut her, causing a sting and leaving a four inch scrape. The victim pleaded with the men and tried to get on their good side. The men eventually told her they would use her as a prostitute and make money off of her. After the men spoke together again privately, Page took the victim for a walk and warned her to do everything Moser told her to do because Moser wanted to kill her. Defendants eventually forced the partially clad victim back into the truck and drove away. Before entirely leaving the swamp, Moser stopped the truck, whereupon Page again made the victim get on her knees so he could urinate into her mouth.
Finally, the men left the swamp area and drove the victim to the Motel 6 in Slidell. Moser got out to rent a room; and, when he had disappeared, the victim was able to escape from the truck. She ran and banged on the doors of various rooms until a police officer from Joplin, Missouri, opened his door and let her in. The victim got into the bed, covered up completely, and sobbed hysterically. Local law enforcement officers were contacted; and they conducted a complete investigation which resulted in the prompt arrest of both defendants at the Budget Host Motel a few blocks away. Extensive physical evidence was recovered at various locations (at the swamp, at Motel 6, and from defendants) which corroborated the victim's account of the events.
PROSECUTOR'S INDIRECT REFERENCE TO DEFENDANTS' FAILURE TO TESTIFY
In assignment of error number one, defendants argue that the prosecutor's reference in the rebuttal argument to the victim's testimony as being "uncontroverted" was an indirect reference to defendants' failure to testify and, thus, mandated a mistrial. The state responds that its remark was made in response to one of the defense attorney's earlier arguments that there was no evidence of penile penetration other than the victim's testimony. The state also argues that the remark did not refer to defendants' failure to testify but, rather, referred to the absence of expert testimony or physical evidence which could refute the victim.
Defendants did not testify on their own behalf at trial, and the defense presented no evidence. During the prosecutor's rebuttal closing argument, the prosecutor responded to the arguments of defense counsel that the state had not proved penile penetration but, instead, proved only that the victim's anus was penetrated with a beer bottle. In the beginning of the rebuttal argument, the prosecutor made the following remarks:
I don't know what trial [defense counsel] have been sitting in for the last three days and what trial they have been listening to the evidence in for the last three days and what trial they have been looking at the physical evidence in for the last three days. But I sure do know that it wasn't this one. In his closing argument, [Moser's attorney] said[,] and [Page's attorney] adopted it, that the only evidence of sexual penetration, of anal sexual penetration, came from the victim. And, "outside of the victim's testimony there is no evidence of sexual penetration", suggesting to you that when she sits up here and tells you, yes, each of these men penetrated my body, my back side, my rectum with their penis, when she says those words to you from the witness stand, ignore them, even though her testimony is uncontroverted with respect to the entire incident.
At that point, defense counsel promptly objected to the prosecutor's comments and moved for a mistrial. The attorneys argued that the prosecutor's remark commented on defendants' failure to testify. In response, the prosecutor denied making a comment "as to that" and claimed further that the law allowed her to mention that the evidence is "uncontroverted."[1] The trial court denied the motion.
Article 770 of the Louisiana Code of Criminal Procedure provides for the ordering *1247 of a mistrial if the prosecutor refers to the defendant's failure to testify:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

* * * * * *
(3) The failure of the defendant to testify in his own defense;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
La.C.Cr.P. art. 770(3) prohibits both direct and indirect references to the defendant's failure to testify. Even without these statutory prohibitions, the United States Supreme Court has held that a prosecutor is not free to comment upon a defendant's failure to take the stand since such a comment violates the self-incrimination clause of the fifth amendment made applicable to the states through the fourteenth amendment. Griffin v. California, 380 U.S. 609, 612-13, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965). See State v. Fullilove, 389 So.2d 1282, 1283 (La.1980).
When the prosecutor makes a direct reference to the defendant's failure to take the stand, a mistrial should be declared. In the case of such a direct reference, a reviewing court will not attempt to determine the effect that the remark had on the jury. State v. Johnson, 541 So.2d 818, 822 (La. 1989); Fullilove, 389 So.2d at 1284.
Where the reference to the defendant's failure to testify is not direct, the reviewing court will inquire into the remark's intended effect upon the jury in order to distinguish indirect references to the defendant's failure to testify (which are impermissible) from general statements that the prosecution's case is unrebutted (which are permissible). Johnson, 541 So.2d at 822; Fullilove, 389 So.2d at 1284.
According to the Louisiana Supreme Court, in Johnson, when the jurisprudence speaks of the need to ascertain the "intention" of a prosecutor's reference to the unrebutted nature of the state's case, the jurisprudence does not envision the impossible task of reading what was actually in the prosecutor's mind at the time the reference was made. Instead, the test to be employed for determining the "intent" of such a reference is as follows.
In cases where the prosecutor simply emphasized that the state's evidence was unrebutted, and there were witnesses other than the defendant who could have testified on behalf of the defense but did not do so, the Louisiana Supreme Court has concluded that the prosecutor's argument does not constitute an indirect reference to the defendant's failure to testify. Johnson, 541 So.2d at 822. On the other hand, where the defendant is the only witness who could have rebutted the state's evidence, a reference to the testimony as uncontrovered or unrebutted focuses the jury's attention on the defendant's failure to testify and mandates a mistrial. Johnson, 541 So.2d at 822.
In this case, the prosecutor commented that the victim's testimony of penile penetration was "uncontroverted." The victim's testimony revealed that she and defendants were the only people present at the time of the commission of the instant offenses. The defense was that the victim was penetrated anally by a beer bottle rather than by the defendants' penises. A beer bottle containing human fecal matter was located at the scene, and the victim admitted that she was unable to see what defendants did behind her and that she never saw Moser with an erection. Since there were no other persons present during the commission of this offense, it is obvious defendants were the only people who could have taken the witness stand to contradict the victim's testimony concerning penile penetration. The scientific evidence resulting from the rape examination of the victim was inconclusive on this point. No sperm *1248 was found in the victim's anus, nor was there any tearing around her anus. Because there were no witnesses other than defendants who could have testified on behalf of the defense but did not do so, the prosecutor's remark indirectly referred to defendants' failure to take the stand in violation of La.C.Cr.P. art. 770(3). See Johnson, 541 So.2d at 822.
La.C.Cr.P. art. 770(3) provides that the trial court "shall" declare a mistrial when the prosecutor "refers directly or indirectly to ... [t]he failure of the defendant to testify in his own defense...." The use of the word "shall" rather than "may" in Article 770 makes it mandatory that a request for a mistrial be granted if the requested mistrial is based properly on a remark or comment proscribed by Article 770. See La.C.Cr.P. art. 5. Thus, the denial of a mistrial upon motion of a defendant, when the motion is based properly on one of the grounds listed in Article 770, is "per se a substantial violation of a statutory right." See State v. Nuccio, 454 So.2d 93, 102 (La.1984), and the cases cited therein. Accordingly, because the proscription in Article 770(3) was violated in this case, the trial court erred by failing to declare a mistrial. Johnson, 541 So.2d at 823.
The Louisiana Supreme Court has not yet definitely decided if a harmless error analysis is ever applicable to the erroneous failure to grant a mistrial properly based on a violation of the proscription in Article 770(3), but it has not precluded such an analysis either.[2] In both Johnson, 541 So.2d at 823, and in State v. Jackson, 454 So.2d 116, 118 (La.1984), the Louisiana Supreme Court seemingly applied a harmless error analysis. In doing so, the Johnson Court concluded that if a harmless error analysis is applicable to such an error, the Court could not say that the error in Johnson was harmless. On the other hand, in Jackson, after concluding that there was no Article 770(3) violation in that case, the Court stated that even if there was such a violation it was harmless. Recently, this Circuit held that a violation of Article 770(3) is subject to a harmless error analysis. State v. Lamark, 584 So.2d 686 (La. App. 1st Cir.1991). See also Johnson, 541 So.2d at 830 & n. 1 (Lemmon, J., concurring).
Our holding in Lamark is in line with federal jurisprudence considering this same issue. In Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that a Griffin v. California error is subject to a harmless error analysis and does not automatically require a reversal. See also United States v. Hasting, 461 U.S. 499, 510-11, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983) (cited in Arizona v. Fulminante, ___ U.S. ___, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)); Anderson v. Nelson, 390 U.S. 523, 524, 88 S.Ct. 1133, 1134, 20 L.Ed.2d 81 (1968) (per curiam). Thus, "[t]he question a reviewing court must ask is this: absent the prosecutor's allusion to the failure of the defense to proffer evidence to rebut the testimony of the victims, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" United States v. Hasting, 461 U.S. at 510-11, 103 S.Ct. at 1981. See also State v. Gibson, 391 So.2d 421, 427 (La.1980).
*1249 For two reasons, we conclude that the prosecutor's remark did not result in reversible error in this case. First, the prosecutor's remark was merely cumulative of earlier remarks made by defendants' attorneys. Second, it is difficult to conceive of a more compelling case of guilt than that present in this case. As a result, we conclude that the error was harmless beyond a reasonable doubt.
During the closing argument presented by Moser's attorney, counsel noted that the evidence in the case was "solely presented by the State." Later, counsel made the remark specifically referred to by the prosecutor during rebuttal: "And, ladies and gentlemen, there is, outside of the victim's testimony, ... which I will get to later on in my argument, there was absolutely no evidence of any sexual, and I mean by a penis[,] penetration of this lady." Near his conclusion, counsel renewed the argument: "The State cannot prove penile penetration beyond a reasonable doubt. It simply cannot. The only evidence came from the victim. And as I have discussed now at length, there is absolutely no way she could have known." Counsel for Page adopted the arguments of Moser's attorney and argued similarly. After alleging that there was no testimony that either Moser or Page ever had an erection, he noted, "[T]hat [testimony] could only come from [the victim]." Thus, it is evident from these remarks that defense counsel practically invited the comment made by the prosecution which indirectly referred to defendants' failure to testify. The remarks by defense counsel, although focusing on the lack of evidence by the prosecution, were quite similar to the prosecutor's subsequent remark. The only people "outside of the victim" who could have testified on this point were defendants. As a result, the prosecutor's remark was cumulative and, as such, amounts to harmless error. See State v. Eastin, 419 So.2d 933, 938-39 (La.1982).
Additionally, as is evident in our discussion of the facts in connection with the second assignment of error, the victim testified unequivocally that she was raped anally by each defendant and this testimony was corroborated by the physical evidence. "In short, a more compelling case of guilt is difficult to imagine." United States v. Hasting, 461 U.S. at 511, 103 S.Ct. at 1982. To establish defendants' guilt, the state did not rely on merely "circumstantial or peripheral" evidence. See Johnson, 541 So.2d at 823. Furthermore, the prosecutor's comment was brief and did not stress the failure of defendants to testify. See Anderson v. Nelson, 390 U.S. at 524, 88 S.Ct. at 1134; Chapman v. California, 386 U.S. at 25, 87 S.Ct. at 829.
Accordingly, we conclude that the prosecutor's remark was harmless beyond a reasonable doubt. The assignment of error is without merit.
SUFFICIENCY OF THE EVIDENCE
In assignment of error number two, defendants argue that the evidence was insufficient to establish that they penetrated the victim's anus with their penises. Defendants claim, instead, that the evidence established only that they inserted a beer bottle into the victim's anus. In response, the state cites several portions of the victim's testimony where she testified without reservation that each defendant inserted his penis into her anus.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) (emphasis in original). See also La.C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). In making this determination, "the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." Mussall, 523 So.2d at 1311.
The crime of aggravated rape is defined as follows:
A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful *1250 consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act.
B. For purpose of Paragraph (5), "participate" shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act.
* * * * * *
La.R.S. 14:42(A) & (B).
The term "rape" is further defined as follows:
A. Rape is the act of anal or vaginal sexual intercourse with a male or female person who is not the spouse of the offender, committed without the person's lawful consent.
B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
* * * * * *
La.R.S. 14:41(A) & (B) (prior to 1990 La. Acts, No. 722, § 1).
Defendants contest only the sufficiency of the state's proof of anal sexual intercourse. Defendants argue that the evidence established that the victim was penetrated anally with a beer bottle only. Accordingly, defendants assert the verdict should be modified to the lesser included responsive offense of sexual battery. See La.R.S. 14:43.1. Defendants' position is based on the following factual allegations. During the offense, the victim was not able to observe what happened behind her, but she felt something which hurt her badly. The victim never saw Moser with an erection; and she was not questioned as to whether or not Page had an erection. No semen was detected during the victim's rape examination, and no fecal matter was detected on defendants' penises during their examinations. The emergency room doctor who examined the victim testified that any object which had been introduced into the victim's anus would have been covered with feces. Significantly, a beer bottle containing human fecal matter was found near the victim's clothing at the scene of the offense.
These allegations, however, are an incomplete review of the evidence introduced in this case. Without reservation, the victim repeatedly testified that the penis of each defendant penetrated her anus during the incident. She persisted in this testimony despite extensive questioning on the point. Even in the absence of scientific evidence of sexual intercourse (such as the finding of sperm in the victim's anus), the testimony of a rape victim alone is sufficient to establish the element of sexual penetration. See State v. Rives, 407 So.2d 1195, 1197 (La.1981); State v. Robinson, 471 So.2d 1035, 1040 (La.App. 1st Cir.), writ denied, 476 So.2d 350 (La.1985). Furthermore, as the doctor noted, the absence of sperm in the victim's anus and the absence of tearing was not unexpected.[3] Although the victim noted that Moser had trouble maintaining an erection during oral sex, she also stated that he inserted his penis into her anus. For sexual intercourse to occur it was not necessary that he ejaculate or have an erection as "any sexual penetration ... however slight is sufficient to complete the crime." La.R.S. 14:41(B). Additionally, the clear implication from the victim's testimony was that the victim observed Page to have an erection. *1251 Defendants point out that no feces was detected on their bodies as would be expected had their penises been inserted into the victim's anus. However, defendants were arrested in a hotel room and their medical examinations were conducted several hours after the incident. Despite the delay, fecal matter was found in the genital area on Page's shirt and pants and in a similar location on Moser's shirt. A paper towel containing human excrement was located by a law enforcement officer at the scene of the rape.
This physical evidence, combined with the diagnosis of anal rape issued by the doctor who examined the victim, corroborates the victim's testimony of penile penetration. The victim admitted that it was possible that an object other than the defendants' penises might also have been inserted into her anus, and she testified that during a "portion" of the time when Page was raping her "it hurt very bad." The possibility that the beer bottle also might have been inserted into her anus does not discredit her remaining testimony of anal rape.
Accordingly, we conclude that the evidence was sufficient to establish defendants' guilt beyond a reasonable doubt. Defendants' assignment of error is meritless.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The state's appellate counsel does not renew this argument on appeal, apparently recognizing that the broad position argued by the prosecutor before the trial court is not supported by the caselaw, as is evident by the decisions cited in this opinion.
[2] The Louisiana Supreme Court also has not definitely decided if a harmless error analysis is ever applicable to error in denying a mistrial under Article 770(2) (introduction of other crimes evidence). In State v. Green, 315 So.2d 763, 765 (La.1975), the Court found error in the prosecution's reference to other crimes evidence and specifically held that the harmless error rule of Article 921 did not apply to a violation of Article 770. However, in a recent Supreme Court decision, two dissenters accused the majority of error by seemingly applying a harmless error analysis to introduction of impermissible other crimes evidence. State v. Romero, 574 So.2d 330, 339 (La.1990) (Watson, J., dissenting, joined by Calogero, J.). Additionally, in State v. Eastin, 419 So.2d 933, 938-39 (La.1982), the Court applied a harmless error analysis to the trial court's failure to grant a mistrial under Article 770(2). The Court noted that the other crimes evidence introduced by the prosecution was cumulative of defendant's earlier testimony. See also State v. Trosclair, 584 So.2d 270 (La. App. 1st Cir.1991); State v. Harris, 573 So.2d 1195, 1198 (La.App. 4th Cir.1991); State v. Hall, 558 So.2d 1186, 1190-91 (La.App. 1st Cir.), writ denied, 564 So.2d 318 (La.1990); State v. Roberson, 454 So.2d 343, 347-48 (La.App. 4th Cir.), writ denied, 458 So.2d 126 (La.1984).
[3] The expert testimony revealed that, because the victim defecated after the incident and because doctors find it difficult to observe sperm in the anus anyway, it was not unusual that sperm was not detected in this victim. Additionally, anal rape of adults does not necessarily result in tearing in the rectal area.